UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| COMMUNITY BROADCASTING COMPANY, d/b/a WABI, CHANNEL 5, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )    CV-07-139-B-W ) |
| TIME WARNER CABLE, LLC, | ) ) |
| Defendant. | ) |

## ORDER AFFIRMING THE
## RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

The United States Magistrate Judge filed with the Court on August 7, 2008 his Recommended Decision (Docket # 50). The Plaintiff Community Broadcasting Services, d/b/a WABI, Channel 5 (WABI) filed its objection on August 25, 2008 (Docket # 52), and the Defendant Time Warner Cable, LLC (TWC) filed its response on September 12, 2008 (Docket # 53). The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and, it concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determines that no further proceeding is necessary.

**I.    DISCUSSION**

In its objection to the Recommended Decision, WABI argues that the Magistrate Judge erred by (1) excluding relevant, material facts from the summary judgment record, and (2) failing to view the record in the light most favorable to WABI. *Pl.'s Obj. to Magistrate Judge Rich's Recommended Decision* (Docket # 52) (*Pl.'s Obj.*).

### A. Relevant, Material Facts

WABI argues that the Magistrate Judge erred by excluding nine relevant, material facts from the summary judgment record. *Id.* at 6-13.

> 1. "The [WABI] signal was accessible to any [TWC] subscriber with a television with a digital tuner." *Pl.'s Resp. to Def.'s Statement of Material Facts and Statement of Additional Facts in Dispute* at 18 ¶ 26 (Docket # 29) (*Pl.'s Resp.*).

The Magistrate Judge omitted this fact as "neither admitted nor supported by the citations given." *Recommended Decision* at 10 n.12 (Docket # 50) (*Rec. Dec.*). The record citations in WABI's statement of additional facts support this conclusion. *See Pl.'s Resp.* at Attach. 21, at ¶ 7 (Docket # 29-22) (*TWC's Answers to Interrogs.*); *Unredacted Doc.* (Docket # 32) at Attach. 2, at 33, 38 (Docket # 32-3) (*Marsh Dep.*).

For support, WABI now points to another section of the Marsh Deposition. *Pl.'s Obj.* at 6-7 (quoting *Marsh Dep.* at 31-32).[1] This effort is unavailing. WABI offers the following exchange:

> Q. And the signal would have gone into a customer's home?
> A. A piece of content would have been floating on that fiber. A usable signal to the customer would not have been.
> . . .
> Q. And it's possible because the signal went out to the customer's homes?
> A. There was content.
> . . .
> Q. . . . . You're saying that it's—there is equipment on the market that people could buy that would have converted the content that was sent out over the cable into a viewable video program?
> A. There are indeed [high definition] televisions on the market that have [Moving Pictures Experts Group-2 (MPEG-2)] capability.

*Id.* While suggestive that a "piece of content" went "out to" TWC customers' homes, and that the content was viewable to those TWC customers with high definition (HD) televisions with

---

[1] The Magistrate was under no obligation to independently comb through the record to identify support for Plaintiff's assertion. *See* D. Me. Loc. R. 56(h)(4) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.").

"MPEG-2 capability," this discussion does not fairly support the proposition that "[t]he signal was accessible to any [TWC] subscriber with a television with a digital tuner," particularly in light of the other prerequisites to viewership identified by the Magistrate Judge. *See Rec. Dec.* at 21-22.

> 2. "In fact, [HD televisions with MPEG-2 capability] are readily available on the market today such as the Magnavox HDTV offered on Walmart.com on April 21, 2008, for less than $230.00, which is equipped with the type of digital tuner capable of viewing that signal." *Pl.'s Resp.* at 18-19 ¶ 27.

The Magistrate Judge omitted this fact as irrelevant, noting also that it is unsupported by the Wal-Mart advertisement referenced in the record citation. *Rec. Dec.* at 10 n.13. WABI argues that the fact is relevant because it shows "that the same type of tuner used to view the unauthorized broadcasts is available for a reasonable price." *Pl.'s Obj.* at 7.

The Court agrees with the Magistrate Judge. The availability and cost of a particular consumer electronic in late April 2008 do not allow a reasonable inference that the same electronic with the same technology was available at similar cost fifteen months earlier. Further, as the Magistrate Judge observed, "[i]t is not clear from the face of the Wal-Mart advertisement that the television to which WABI points was capable of decoding TWC's MPEG transmission." *Rec. Dec.* at 10 n.13. The advertisement includes a listing for an "LCD HDTV w/ Digital Tuner." See *Pl.'s Resp.* at Attach. 9 (Docket # 29-10). As will be discussed, WABI has failed to adduce sufficient evidence from which it is reasonable to infer that all digital tuners were capable of decoding an MPEG-2 signal, and WABI's record citations do not support a finding that the advertised television "is equipped with the type of digital tuner capable of viewing" the WABI signal.

> 3. "TWC teaches its customers on the frequently asked questions portion of its website how to hook up a television such as an HDTV with a built in digital tuner to the cable system without a cable converter." *Pl.'s Resp.* at 19 ¶ 28.

The Magistrate Judge excluded this fact as "unsupported by the citation given." *Rec. Dec.* at 10 n.13. WABI argues that "[t]his is an obvious mistake because the factual assertion is taken almost verbatim from the document [cited as record support in the statement of additional facts]." *Pl.'s Obj.* at 7-8. Contrary to WABI's assertion, the exhibit addresses "Basic TV Hookup without a Cable Converter," and does not mention high definition televisions with built-in digital tuners. *Pl.'s Resp.* at Attach # 10 (Docket # 29-11). Without more, it is not reasonable to infer that the instruction applies to such televisions.[2]

> 4. "TWC personnel also viewed the programming on an HDTV located at the Augusta facility." *Pl.'s Resp.* at 19 ¶ 29.

The Magistrate Judge excluded this fact because WABI failed to provide complete record support. *Rec. Dec.* at 12 n.19. WABI acknowledges its failure and contends that it was inadvertent. *Pl.'s Obj.* at 8-9. It argues that "this small omission should not serve as the basis for throwing out WABI's entire case," and suggests that the "discrepancy could have been resolved at oral argument" if only the Magistrate Judge had not denied such argument. *Id.*

As an initial matter, the Magistrate Judge's decision to exclude the unsupported fact was entirely appropriate. *See* D. Me. Loc. R. 56(h)(4) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary

---

[2] WABI's reference to the owner manuals for the Sony and Panasonic televisions used by Mr. Hayden and Mr. Cushing is immaterial. *Pl.'s Obj.* at 8 n.3. There is no dispute that those televisions could be used to view the WABI signal and their ability to do so is of no moment in evaluating TWC's frequently asked questions.

4

judgment"). Further, the Magistrate Judge was under no obligation to hold oral argument, and WABI's attempt to hold the Magistrate Judge responsible for its oversight is misguided.[3]

> 5. "Mr. Hayden testified that the signal would also be viewable by a customer with a HDTV that automatically scanned the channels, without a digital box or a converter box. Mr. Hayden further testified that 'auto searches' are available in most high definition televisions sold in the last 10 years." *Pl.'s Resp.* at 7 ¶ 31 (citation omitted).

The Magistrate Judge excluded this evidence as "not a completely fair characterization of the cited portion of Hayden's deposition." *Rec. Dec.* at 11 n.16. The relevant section of the deposition includes:

> Q. Why did you – if you already had a digital box, why did you install a separate cable directly from the splitter?
> A. For – I – I – my profession is technology.
> Q. Right.
> A. So I was informed that there was a digital tuner in a Sony definition – Sony high-def TV so connected to that, did an auto search on the channels to see what would come up.
> Q. Okay. And is that the process that you were using when you first saw this news segment?
> A. Correct.
> Q. Okay. And describe [t]o me what an auto search consists of.
> A. Auto searches are in most recent newer TVs –
> Q. Yes.
> A. – prior – the past 10 years and it's a way for the TV to go through the cable connection and pull up the stations that are available that are given to you by the cable provider.
> Q. Without using the digital box or converter box; is that – I've described, right?
> A. Correct. It's the same way that you would connect an analog[] TV and pull down your 2 through 72 channels.

*Decl. of Michael J. Sullivan* (Docket # 20) at Attach. 12, at 24:24-25, 25:1-22 (Docket # 20-13) (*Hayden Dep.*).

---

[3] These issues aside, the Court is not anxious to sanction a party for a minor procedural miscue. *See Ricci v. Applebee's Northeast, Inc.*, 297 F. Supp. 2d 311, 321 (D. Me. 2003) (considering evidence in evaluating a motion for summary judgment despite a party's failure to strictly comply with Local Rule 56). TWC does not deny the accuracy of the statement and the record supports it. *See Marsh Dep.* at 35:16-25, 36:1-6. Nevertheless, inclusion of this fact in the summary judgment record would not affect the outcome.

Absent from this dialogue is support for WABI's former contention, that Mr. Hayden "testified that the signal would also be viewable by a customer with a HDTV that automatically scanned the channels, without a digital box or a converter box." The Magistrate Judge rightly excluded this sentence.

It is a closer question whether it is fair to characterize Mr. Hayden's answers as testimony "that 'auto searches' are available in most high definition televisions sold in the last 10 years." Mr. Hayden's analogy to analog television fairly suggests that his statement that "[a]uto searches are in most recent newer TVs" was in reference to non-analog, thus digital, televisions. Further, the context of the discussion, with Mr. Hayden specifically discussing his Sony HD television, suggests that his statement about the ubiquity of auto search functionality applies to televisions capable of receiving and playing HD digital signals, not standard digital signals.

In the end, however, the question is moot. Apart from Mr. Hayden's testimony that "my profession is technology," the record lacks sufficient basis to qualify him as an expert witness. *See* Fed. R. Evid. 702, 703, 705. As a fact witness, Mr. Hayden's testimony is limited to opinions or inferences "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The prevalence of an auto search feature in HD digital televisions over the past ten years is not a matter of common knowledge. Accordingly, Mr. Hayden's testimony on the matter falls outside the bounds allowed for a lay witness, and is appropriately disregarded.

> 6. "TWC customer services representatives admitted to WABI on February 22, 2007, that digital WABI signals were being transmitted on Channel 705. Mr. Young took written notes during the conversations, a true and accurate copy of which have been marked as Dep. Ex. 30." *Pl.'s Resp.* at 19 ¶ 32 (citation omitted).

The Magistrate Judge omitted this paragraph as "unsupported by the citation given." *Rec. Dec.* at 12 n.20. The record citation in WABI's statement of additional facts directed the

Magistrate Judge to the Young Deposition. *Pl.'s Resp.* at 19 ¶ 32. In the deposition, Mr. Young refers to Exhibit 30 and identifies it as a typewritten version of notes he took during calls with TWC customer service representatives. *See Pl.'s Resp.* at Attach. 26, at 59:3-25 (Docket # 29-27) (*Young Dep.*). Although Exhibit 30 was referenced in WABI's statement of additional facts, WABI failed to file the exhibit. *See Pl's Obj.* at 10. Accordingly, the Magistrate Judge's exclusion was sound.

WABI has since filed the relevant exhibit and now asks the Court to consider what it failed to provide the Magistrate Judge. Whether to do so is discretionary. *See* D. Me. Loc. R. 56(h)(4); *Ricci*, 297 F. Supp. 2d at 321. The Court declines to consider the late-filed exhibit. "Parties must take before the magistrate, not only their best shot but all of their shots." *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (internal quotation omitted).

> 7. "The assignment of channel 705 to WABI's digital signal is consistent with the TWC practice of assigning HD channels in the 700's to coincide with the analog channels." *Pl.'s Resp.* at 19 ¶ 33.

The Magistrate Judge omitted this sentence as "neither admitted nor supported by the citations given." *Rec. Dec.* at 12 n.21. The most relevant section of the record offered by WABI is:

> Q. Okay. Was it – was a channel assigned to the signal?
> A. A channel had been identified but had not been assigned.
> Q. What channel had been identified?
> A. Our - the directive that I've had for any programming channelization was handed down to me, and it was based on trying to maintain a commonality between the broadcasters' normal off-air channel and where we put it on the system. So in this case, Channel [W]ABI being Channel 5, this would have fallen into our 700 range and would have ended up at 705, if and when it was built into the data access controller.

*Marsh Dep.* at 41:5-15.

During the discussion, Mr. Marsh distinguished between channel assignment and channel identification, and indicated that he did not agree that a channel had been assigned. To cite him for such a conclusion is at odds with his express words, and to infer that he meant other than what he said is unreasonable. Contrary to WABI's objection, exclusion of this paragraph does not constitute "splitting hairs," it is instead faithful adherence to Mr. Marsh's testimony.

> 8. ". . . nor has TWC explained why it was necessary to send the signal into the homes of all the TWC subscribers in the WABI viewing area continuously for a six day period." *Pl.'s Resp.* at 20 ¶ 34.

The Magistrate Judge omitted this assertion as "neither admitted nor supported by the record citation given." *Rec. Dec.* at 12 n.18. WABI does not refute this conclusion, and review of the record citation given in its statement of additional facts validates the Magistrate Judge's conclusion. *See TWC's Answers to Interrogs.* ¶ 7. The fact was properly excluded.[4]

> 9. "[Digital and MPEG tuners] are indeed the same." *Pl.'s Surreply to Def.'s Reply* at 4 n.4 (Docket # 47) (*Pl.'s Surreply*).

Unlike the other alleged erroneous exclusions, WABI's contention that digital and MPEG tuners are the same was not offered as a relevant, material fact pursuant to the Local Rule 56 procedure for development of a summary judgment record. On this basis the Magistrate Judge refused to credit WABI's assertion to this effect, first presented in WABI's surreply brief. *See Rec. Dec.* at 21. WABI argues that this was an error. It was not. Whether or not digital and MPEG tuners are the same is a factual question. There is no affidavit or testimony in the record attesting to the equivalence of digital and MPEG tuners. *See Rec. Dec.* at 21. Pursuant to Local Rule 56, WABI's assertion is not a relevant, material fact in the summary judgment record. To avoid this result, WABI seeks to supplement the record with a Wikipedia entry and a dictionary definition. The Court will not consider these late-filed supplements. *Borden*, 836 F.2d at 6.

---

[4] WABI argues that the Magistrate did not properly weigh the fact that TWC did not produce a document showing the results from its test of the WABI signal. *Pl.'s Obj.* at 11-12. The Court finds no such error.

WABI finds significance in the fact that two individuals, Mr. Cushing and Mr. Hayden, viewed WABI programming during the testing period on televisions with digital tuners. While this testimony allows the inference that *some* televisions with digital tuners could decode an MPEG-2 signal, it does not, by itself, allow a reasonable inference that digital and MPEG tuners are equivalent. Nor does it suffice to create a factual dispute whether all televisions with digital tuners could view the WABI signal. As the Magistrate Judge carefully outlined, the record is replete with evidence that, beyond a digital tuner, there were a number of other barriers to viewership of the WABI signal during the testing period. *See Rec. Dec.* at 21-22.

Finally, WABI argues that the equivalence of MPEG and digital tuners is beside the point: "if 'MPEG' and digital signals are different, then WABI wins because there is admissible evidence that Hayden and Cushing viewed the signal with a *digital* tuner. If they are the same, then WABI wins because TWC admits that the signal was viewable on an MPEG tuner." *Pl.'s Obj.* at 12-13. Again, the problem with this formulation is that it places dispositive weight on the tuner question and ignores the substantial record evidence indicating that MPEG-2 decoding capability was one of several obstacles standing between potential viewers and the WABI signal. The equivalence question becomes non-dispositive, because there is insufficient record evidence to infer that these other hurdles were clearable by a substantial number of TWC subscribers.

### B. Inferences

WABI next contests the Magistrate Judge's conclusion that it failed to put forth sufficient evidence to show a substantial number of TWC subscribers were capable of viewing the WABI signal during the testing period. Specifically, it alleges three instances where the Magistrate Judge erred because he did not view the facts in the light most favorable to WABI and drew inferences in favor of TWC. *Pl.'s Obj.* at 13-16.

### 1. Bypass of a Converter Box

WABI contends that one could infer from the record evidence that a substantial number of TWC subscribers hooked up their televisions to bypass a convertor box. *Pl.'s Obj.* at 13-14. In support, it points to two facts. First, two TWC subscribers, Mr. Cushing and Mr. Hayden, testified that they viewed the WABI programming during the testing period. Second, TWC teaches its customers how to hook up a television without a cable converter on the frequently asked questions page of its website. As previously discussed, the Magistrate Judge properly excluded the latter fact from the summary judgment record because the relevant frequently asked question addressed basic television hook-up. With regard to Mr. Cushing, he testified that he viewed WABI's digital signal "on a Panasonic TH-50PX50U television set with a built-in cable card, which enabled him to connect the television directly to his cable without the use of a cable converter box." *Rec. Dec.* at 13. For his part, Mr. Hayden "had configured his television such that TWC's coaxial cable was connected directly to [his] television." *Id.* at 14. The Court cannot reasonably infer from this testimony alone that a substantial number of TWC subscribers similarly bypassed converter boxes.

### 2. MPEG and Digital Tuners

The record is insufficient to include the equivalence of MPEG and digital tuners as a relevant, material fact in the summary judgment record.[5] Nevertheless, WABI argues that evidence properly within the record combined with "common sense" allow such an inference. For support, WABI rests upon the testimony from Messrs. Cushing and Hayden that they viewed the WABI signal on televisions with digital tuners. However, when combined with the evidence that the signal could only be viewed on televisions capable of decoding MPEG-2 signals, the reasonable conclusion is that the signal could be viewed on those digital tuners capable of

---

[5] *See* discussion *supra* at 8-9.

decoding MPEG-2 signals, not that digital tuners are the same as MPEG tuners. The Court cannot agree that "common sense" dictates otherwise.

### 3. Channel Assignment

WABI contests the Magistrate Judge's finding that TWC did not assign WABI's signal to Channel 705. Because WABI failed to submit an exhibit supporting its assertion, in making his determination, the Magistrate Judge appropriately excluded WABI's claim that TWC customer service representatives admitted that digital WABI signals were being transmitted on Channel 705. WABI has since filed the exhibit, which quotes a TWC representative as stating "[w]e had [the WABI signal] on for a couple of weeks channel 705 [sic]." *Pl.'s Obj.* at Attach. 5. The Court will not consider this late-filed exhibit. *Borden*, 836 F.2d at 6.

### C. Public Performance

To forestall summary judgment, WABI must adduce sufficient evidence to show that TWC's secondary transmission of WABI's signal was "to the public" pursuant to 17 U.S.C. § 111(c)(2). As the Magistrate Judge noted, and WABI agrees, to satisfy its burden, WABI need not prove that a substantial number of people actually viewed the challenged transmission; however, it must prove that the challenged transmission was capable of being viewed by a substantial number of people. *See Rec. Dec.* at 18-19; *Pl.'s Obj.* at 5; *see also Cartoon Network L.P., L.L.L.P. v. CSC Holdings, Inc.*, 536 F.3d 121, 139 (2d Cir. 2008) ("In sum, we find that the transmit clause directs us to identify the potential audience of a given transmission, i.e., the persons 'capable of receiving' it, to determine whether that transmission is made 'to the public.'").

WABI contends that the Magistrate Judge misapplied the standard, "confusing *capable* with *likely*." *Pl.'s Obj.* at 13. The Court finds no such error. As the Magistrate Judge

11

methodically outlined, based on the summary judgment record, viewership of the WABI signal required satisfaction of at least three prerequisites: (1) possession of a television equipped to receive digital signals and decode MPEG-2 signals; (2) connection of the coaxial cable directly to the television set, bypassing converter boxes; and, (3) discovery of the WABI transmission by scanning channels manually or via auto-search during the one week period in question. *See Rec. Dec.* at 21-23. Unless all three requirements were met, the challenged transmission was not "capable of being viewed." WABI has placed little cognizable evidence into the record from which the Court can reasonably infer the number of people likely to have satisfied any one of these requirements, let alone all three. Without such evidence, the Court cannot reasonably conclude that a substantial number of people were capable of viewing the transmission. *See Cartoon Network*, 536 F.3d at 137 (noting that, in determining whether a particular transmission is "to the public," "any factor that limits the potential audience of a transmission is relevant").

WABI objects to the Magistrate Judge's reliance on *Los Angeles News Service v. Reuters Television International, Limited*, 942 F. Supp. 1265 (C.D. Cal. 1996), *rev'd in part on other grounds*, 149 F.3d 987 (9th Cir. 1998), contending that "the facts of *Los Angeles News* are completely different from the facts of this case." *Pl.'s Obj.* at 14. The relevance of *Los Angeles News*, however, is not predicated on its facts, but what it says about the summary judgment burden on a copyright infringement plaintiff. In *Los Angeles News*, the court granted judgment after the plaintiff failed to produce evidence from which it could find "that a substantial number of people could have seen the copyrighted footage." *L.A. News Serv.*, 942 F. Supp. at 1270. In the absence of such evidence, the court surmised that it was possible that "only one or two people—an insubstantial number—could view it." *Id.*

Here, WABI adduced evidence that two TWC consumers viewed the WABI signal in their homes, and that an unspecified number of TWC personnel viewed it at the TWC facility in Augusta in the course of testing the signal. It produced no evidence to allow an inference that the two consumers are representative of other TWC consumers, or any other data from which the Court might reasonably estimate the population of TWC consumers capable of viewing the transmission given the hurdles to viewership. It has provided scant information about the circumstances of the viewing in Augusta, and makes no argument that such viewing constituted a cognizable transmission independently or in combination with the two consumer viewings. Without more, the Court cannot infer that a substantial number of people could have seen the copyrighted material.

## II. CONCLUSION

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge (Docket # 50) is hereby AFFIRMED. It is further ORDERED that Defendant Time Warner NY Cable LLC's Motion for Summary Judgment (Docket # 18) is GRANTED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 25th day of February, 2009